UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JANE DOE, a minor, by her Parents and
Natural Guardians, MARY DOE and JOHN
DOE,

                          Plaintiffs,

              - against -

THE ENLARGED SCHOOL DISTRICT OF
MIDDLETOWN, PATRICIA McLEOD, Acting
Superintendent of the Enlarged City School
District of Middletown, GORDON DEAN,
Principal, Twin Towers Middle School,

                          Defendants.
------------------------------------------------------

04 Civ. 3454 (CLB)

*Memorandum and Order*

Brieant, J.

      By motion filed on March 31, 2005 (Doc. #7), heard on May 13, 2005, and fully submitted on May 31, 2005, Defendants the Middletown School District, Acting Superintendent Patricia McLeod and Twin Towers Middle School Principal Gordon Dean move for summary judgment under Fed. R. Civ. P. 56. Opposition papers to this motion were filed on April 14, 2005. Also before the Court is Plaintiff's cross-motion for summary judgment, filed on April 14, 2005. (Doc. #18). Opposition papers to this motion were filed on April 29, 2005.

      The following facts are assumed to be true for purposes of these motions only. Plaintiff Jane Doe ("S.P."), currently a twelve year old minor, was and continues to be a student in the Twin Towers Middle School located in Middletown, New York. On or about October 12, 2003, while she was eleven years old, S.P. attended a sleep-over party at her friend's home. At this party, she drew pictures of gravestones. On the gravestones were the names of two of her

-1-

teachers, Ms. Hehn and Ms. Davis. The gravestones were inscribed with the words "R.I.P." as well as vulgar language indicating the Plaintiff's dislike for these individuals, and at least one picture indicating that S.P. had played a direct role in Ms. Davis's death. Plaintiff made these drawings because she was "really mad" at these teachers.

These pictures were discovered by the sleep-over party's host, and were brought to the Middletown Police Department, where a police report was filled out by P.O. Christine Frarey. The drawings were then turned over to Janet Davis, who is the Twin Towers Middle School Assistant Principal. Ms. Davis informed Mr. Gordon Dean, the school Principal, sued herein, about the drawings. On October 14, 2003, S.P. was suspended from school by Mr. Dean from October 15 until October 21. On October 15, 2003, he charged S.P. with "conduct endangering safety, morals, health, or welfare of others. Specifically, [S.P.] made threats in writing toward staff members."[1] This charge was based upon Section VI of the School's Code of Conduct. This Code, which Plaintiff admits was received and read by Plaintiff's mother, states that it is improper to "engage in any conduct that endangers the safety, morals, health or welfare of others. . . ." The Code gives examples of conduct that violates this section, including, but not limited to:

    (I) Lying to school personnel;

    (ii) Intimidation, which includes engaging in actions or statements that put an individual in fear of bodily harm;

---

[1] Earlier in the month, the children in the drama club, including S.P., were asked to make decorations for the school's Halloween haunted house. Plaintiff claims that the children made gravestones with the letters "R.I.P." and a teacher's name. These gravestones were not used in the haunted house, by Mr. Dean's direction.

(iii) Using vulgar or abusive language, cursing, or swearing.

Upon notice, a Superintendent's Hearing took place on October 21, 2003. The Hearing Officer, Mr. Cornelius Sullivan, recommended that S.P.'s suspension be continued until the end of the second marking period, which ended on January 30, 2004. On October 29, 2003, Defendant McLeod adopted this recommendation. Based upon S.P. progress through home tutoring, S.P. requested permission to return early on November 19, 2003, and on December 1, 2003, Mr. Dean informed S.P. that she could return to school on December 1, 2003. She did return then, and has continued attending.

Plaintiff filed her Complaint in this Court on May 5, 2004. She alleged a violation of her First Amendment right to free speech and her Fourteenth Amendment right to Due Process. In this current motion, Defendants assert that (1) they are entitled to qualified immunity; (2) the School District's Code of Conduct is Constitutional both facially and as applied to S.P.; and finally (3) S.P.'s right to Due Process was not violated. In their cross-motion, Plaintiffs argue that (1) Defendants are not entitled to qualified immunity; (2) Defendants' conduct infringed upon S.P.'s First Amendment right to free speech; (3) S.P.'s drawings did not constitute a "true threat"; and (4) the School Code of Conduct, as applied, violated S.P.'s right to Due Process.

*Qualified Immunity*

A public official, such as a public school administrator, is entitled to qualified immunity for acts undertaken in his or her official capacity, unless those acts violated clearly established constitutional rights of which an objectively reasonable official would have known. *See Harhay*

*v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2nd Cir. 2003). The analysis is three-part. First, the Court must decide whether the plaintiff has alleged a violation of a Constitutional right. Second, the right must have been well established at the time of the violation. Finally, notwithstanding the violation of clearly established Constitutional rights, the official will still receive immunity if his or her actions were objectively reasonable. *See id. at 212.* Taking plaintiffs' version of the facts as true, if a reasonable official would have believed that he or she was not violating plaintiffs' constitutional rights, the Court should find qualified immunity. *See Bizzaro v. Miranda et. al.*, 394 F.3d 82, 86 (2nd Cir. 2005).

A right is "clearly established" if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The unlawfulness of the act must be apparent in light of currently existing law. *See Huminski v. Corsones*, 386 F.3d 116, 151 (2nd Cir. 2004). Qualified immunity is not determined based upon the knowledge an attorney conducting legal research would possess, but what a reasonable person should have known. See *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2nd Cir. 2001). It gives "ample room for mistaken judgment" and protects all but the plainly incompetent or those who knowingly violate the law." *See 1` Sira v. Morton*, 380 F.3d 57, 81 (2nd Cir. 2004). This "ample room" exists because public officials should not hesitate to act because they fear individual liability for good faith mistakes in judgment. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

An official's actions must first violate Constitutional rights which were clearly

established at the time the official acted. In this case, they did.

The childish scribblings for which S.P. was suspended are protected by the First Amendment to the United States Constitution, and even were they not so protected, Defendants' actions violated Plaintiffs' right to Due Process.

Public schools generally cannot regulate student speech off campus. *Thomas v. Board of Education*, 607 F.2d 1043 (2d Cir. 1979). Plaintiff was not charged with making a true threat to either of the teachers, and no reasonable person could perceive these cartoon figures as a threat, especially in light of the prior exercise in the school, of drawing tombstones with teachers' names for the haunted house exercise (an activity of doubtful educational value, which teaches superstition, also in violation of the establishment clause of the First Amendment).

Additionally, Plaintiff's Due Process rights under the Fourteenth Amendment were violated. The School Code of Conduct's annotations state that the "district's Code of Conduct begins with a clear statement as to the purpose of the Code and the district's commitment to establishing, maintaining, and when necessary restoring, a safe and orderly school environment." The Middletown Code has expressly limited the District's ability to punish a student for off-campus conduct. It specifies in its introduction that "unless otherwise indicated, this Code applies to all students, school personnel, parents and other visitors <u>when on school property or attending a school function.</u>" (emphasis added). The definitions of both "school property" and "school function" are taken from N.Y. Educ. L. § 2801. "School property" is defined as:

>any building, structure, athletic playing field, playground, parking lot or land contained within the real property boundary line of a public elementary or secondary school, or in or on a school bus. . . .This Code shall apply to all persons attending school sponsored activities while off school property as herein described, such as while at a movie theater with a school group, as while on a field trip, athletic contest, or any other school activity or program off-premises.
>
>"School function" is defined as "any school-sponsored extra-curricular event or activity."

The student's location when acting is an integral part of the Code's prohibitions. With minor exceptions, not applicable here, a "violent student" is a student under twenty-one years of age who commits a violent act while on school property or a school function. The student dress code applies "for school and school functions." Under the heading "Prohibited Student Conduct," the Code states that "the Board recognizes the need to make its expectations for student conduct while on school property or engaged in a school function specific and clear. The rules of conduct listed below are intended to do that and focus on safety and respect for the rights and property of others."

There is no dispute that S.P. was neither on school property nor at a school function when she drew her pictures. She was not charged with a crime. S.P.'s right to Due Process was clearly established when she was suspended. While the hostility evidenced in the drawings is most regrettable, the child is still entitled to Due Process. Defendants punished her for violating the Code of Conduct, specifically, "conduct endangering safety, morals, health, or welfare of others. Specifically, [S.P.] made threats in writing towards staff members." The Defendants knew clearly that their Code of Conduct did not apply to off-campus conduct that was not related

to school functions, and it is highly questionable whether the pictures constituted threats in writing.

Accordingly, Defendants' conduct in so charging her under the Code of Conduct violated S.P.'s Due Process rights. The Court concludes that Defendants' actions in doing so were not objectively reasonable, and accordingly are not entitled to qualified immunity.

Defendants' motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment is also denied as a matter of discretion, in order that the case may be resolved on a full trial record. *See Moore's Federal Practice*, § 56.41 [3][d].

The School District and its officials to the extent sued in their official capacity are entitled to Eleventh Amendment immunity.

The Court declines at this time to make the finding contemplated by Rule 54(b) Fed. R. Civ. P. A final pre-trial conference is hereby set for July 22, 2005 at 9:00 a.m.

X

        X

                X

                    X

SO ORDERED.

Dated: White Plains, New York
       May 31, 2005

*Charles L. Brieant*
Charles L. Brieant, U.S.D.J.